UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-81587-CIV-ZLOCH/ROSENBAUM

JONATHAN KANFER,

        Plaintiff,

v.

WELLCARE OF FLORIDA, INC., a
Florida corporation,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court upon Plaintiff Jonathan Kanfer's Motion for Remand [D.E.5], upon referral by the Honorable William J. Zloch. *See* D.E. 19. I have reviewed Plaintiff's Motion, all filings in support thereof and in opposition thereto, and the record in this matter and am otherwise duly advised in the premises. Additionally, I have heard argument on Plaintiff's Motion on March 4, 2010. After taking into account all relevant considerations, I respectfully recommend that the Court grant Plaintiff's Motion for Remand.

### *Background*

Plaintiff Jonathan Kanfer ("Kanfer" or "Plaintiff") is a former employee of Defendant WellCare of Florida, Inc. ("WellCare" or "Defendant"), Florida corporation engaged in the business of providing healthcare insurance programs. *See* D.E. 1 at 10-11;[1] *see, generally*, D.E. 13

---

[1] Some docket entries, including this one, have two page-numbering systems resulting in different page numbers on the same page: the page number of the original document and the page number imprinted across the top of the page by the Court's CM/ECF system. This Report and Recommendation refers to the page numbers left by the Court's CM/ECF system.

(discussing how federal regulations apply to WellCare's business). On September 30, 2009, Kanfer filed suit against WellCare in Florida state court, alleging that WellCare had terminated Kanfer's employment in violation of the Florida Whistle-Blower Act, Fla. Stat. §§ 448.101, *et seq.* *See* D.E. 1 at 10-12. According to the Complaint, Kanfer's WellCare supervisors directed Kanfer to "'cold call' former customers of Well[C]are to entice them to return." *Id.* at 11. Because Kanfer believed this instruction to violate the Code of Federal Regulations regarding solicitation, as well as rules issued by the Center for Medicare and Medicaid Services ("CMS"), a division of the United States Department of Health and Human Services ("HHS"), he declined to do what the WellCare supervisors had asked. *Id.* Kanfer avers that a WellCare supervisor then made it clear to Kanfer that WellCare would fire Kanfer if Kanfer refused to make the calls as directed. *Id.* Subsequently, WellCare, did, indeed, terminate Kanfer's employment, advising Kanfer that it had fired him because of "complaints filed with CMS." *Id.* Kanfer asserts that WellCare's stated reasons for ending Kanfer's employment were pretextual, offered in an effort to "cover[] up] for its termination of [Kanfer's] employment due to his opposition to Well[C]are's illegal practices." *Id.*

Defendant WellCare timely removed the lawsuit to federal court on October 27, 2009. *See* D.E. 1 at 1. In its Notice of Removal, WellCare contends that removal is proper "because within Plaintiff's Complaint is a claim 'arising under the Constitution laws or treaties of the United States.'" *Id.* at 2 (quoting 28 U.S.C. § 1331). As WellCare describes the nub of Plaintiff's Complaint, "Plaintiff's state law claim . . . turn[s] on the construction of federal rules and regulations." *Id.* (citing *City of New York v. FCC*, 486 U.S. 57 (1988)). More specifically, WellCare argues that to prevail on his claim, Kanfer must establish that the practice to which Kanfer objected actually violated a law, rule, or regulation. *Id.* at 3. Because the law, rule, or regulation allegedly violated

in this case allegedly concerns federal regulations and rules, WellCare reasons, the presiding court must necessarily interpret federal law to determine whether the requisite violation occurred. *Id.* Thus, according to WellCare, removal to federal court is appropriate. *Id.*

In response to WellCare's Notice of Removal, Plaintiff timely filed the pending Motion for Remand [D.E. 5]. In his Motion for Remand, Plaintiff contends that WellCare "has not demonstrated, and cannot demonstrate, that Plaintiff's state-law claim necessarily raises a stated federal issue, one actually disputed and substantial, which this federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." D.E. 5 at 1. Consequently, Kanfer asks this Court to remand this case to state court for all further proceedings. *Id.*

WellCare takes issue with Kanfer's characterization of the dispute, insisting that the federal regulations, rules, and guidance governing health insurance programs' communications with customers and potential customers were complex and unclear at the time of the alleged illegal conduct. *See, generally,* D.E. 13. Thus, WellCare concludes, a substantial federal interest in resolving the alleged lack of clarity exists, warranting the exercise of federal jurisdiction. *Id.*

During the hearing on March 5, 2010, counsel for Plaintiff indicated that he understood Kanfer to be alleging that WellCare supervisors directed Kanfer to contact former WellCare plan members who no longer had any connection with WellCare. He further argued that, if true and WellCare should have known that these individuals were no longer WellCare members, contacting these former members would have been in clear violation of federal law at the time that it occurred. While WellCare did not dispute this characterization of federal law, WellCare, nonetheless, responded that it believed that all individuals whom WellCare supervisors instructed Kanfer to cold

call, although former WellCare plan members for certain purposes, remained WellCare members of at least some plan. Consequently, WellCare contended, federal law did not clearly prohibit such contacts at the time. Kanfer did not contradict WellCare's statement in this regard. This matter is now ripe for disposition.

### *Analysis*

Federal courts enjoy only limited jurisdiction. *Bochese v. Town of Ponce Inlet,* 405 F.3d 964, 974 (11th Cir.), *cert. denied,* 546 U.S. 872 (2005). On a motion for remand, the removing defendant shoulders the burden of demonstrating that federal jurisdiction lies in the case. *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294 (11th Cir. 2008) ("*Adventure Outdoors*") (citing *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002). In accomplishing this task, the removing defendant must overcome the narrow construction of removal statutes. *See Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998). "The strict construction of removal statutes . . . prevents 'exposing the plaintiff to the possibility that he will win a final judgment in federal court, only to have it determined that the court lacked jurisdiction on removal,' . . . a result that is costly not just for the plaintiff, but for all the parties and for society when the case must be relitigated." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (quoting *Cowart Iron Works, Inc. v. Phillips Constr. Co., Inc.*, 507 F. Supp. 740, 777 (S.D. Ga. 1981) (quoting 14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3721)). Thus, "[a]ny doubts about the propriety of federal jurisdiction should be resolved in favor of remand to state court." *Adventure Outdoors*, 552 F.3d at 1294 (citing *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996)).

Here, WellCare premises federal jurisdiction in this case on 28 U.S.C. § 1441(b), which, in turn, provides, in relevant part, "**Actions removable generally.** (b) Any civil action of which the

district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." *See* D.E. 1 at 2. WellCare asserts that Kanfer's claim in this case is one "arising under . . . the laws of the United States," and, consequently, this Court has jurisdiction over it. *See* D.E. 1 at 2.

### A.  The Controlling Case Law

### 1.  *Grable*

In support of its position, WellCare relies primarily on *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) ("*Grable*"). In *Grable*, the Internal Revenue Service ("IRS") seized real property belonging to the plaintiff in order to satisfy a federal tax delinquency. Subsequently, the IRS sold the property to the defendant and gave the defendant a quitclaim deed. Five years later, the plaintiff brought a quiet title action in state court, claiming that the defendant's record title was not valid because the IRS had failed to notify the plaintiff of its seizure of the property in the exact manner required by 26 U.S.C. § 6335(a), which the plaintiff construed as requiring personal service, as opposed to service by certified mail, which the IRS had provided. After the defendant removed the case to federal court, the plaintiff sought to remand the matter back to state court. The district court denied the plaintiff's motion, finding that federal question jurisdiction existed. *See id.* at 311.

The Supreme Court agreed. In reaching this conclusion, the Supreme Court acknowledged "the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.* at

312 (citation omitted). Despite this consideration, however, the Supreme Court cautioned that "a request to exercise federal-question jurisdiction over a state action calls for a 'common-sense accommodation of judgment to [the] kaleidoscopic situations' that present a federal issue, in 'a selective process which picks the substantial causes out of the web and lays the other ones aside.'" *Id.* at 313 (quoting *Gully v. First Nat. Bank in Meridian*, 299 U.S. 109, 117-18 (1936)). Moreover, the Supreme Court noted, "[E]ven when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto. For the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application § 1331." *Id.* at 313-14. In this regard, the Supreme Court explained, in determining whether a federal court should exercise "arising under" jurisdiction to hear a state-law claim, a court "must always [make] an assessment of any disruptive portent [to the interrelation of federal and state authority and the proper management of the federal judicial system] in exercising federal jurisdiction." *Id.* at 314.

Packaging all of these considerations neatly into a single test, the Supreme Court announced, "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. In applying this formulation to the *Grable* facts, the Supreme Court answered in the affirmative and therefore found federal "arising under" jurisdiction. *Id.*

**2.  *Empire Healthchoice Assur., Inc.***

Following *Grable*, the Supreme Court issued *Empire Healthchoice Assur., Inc. v. McVeigh*,

547 U.S. 677 (2006) ("*Empire*").  In *Empire*, the plaintiff was an insurance carrier that administered a health plan for federal employees under the Federal Employees Health Benefits Act.  After the defendant plan beneficiary recovered damages from a third party in the settlement of a state tort action, the plaintiff sued that plan beneficiary for reimbursement of claims that the plaintiff had previously paid in association with the settled claims.  In distinguishing the case from *Grable* and finding no federal jurisdiction, the Supreme Court explained, "The dispute [in *Grable*] centered on the action of a federal agency (IRS), and its compatibility with a federal statute, the question qualified as 'substantial,' and its resolution was both dispositive of the case and would be controlling in numerous other cases." *Id.* at 700.  Additionally, the Court continued, *Grable* involved a "nearly 'pure issue of law,' one 'that could be settled once and for all and thereafter would govern numerous tax sale cases.'"  *Id.* (citation omitted).  *Empire*, on the other hand, regarded a claim that was "fact-bound and situation-specific."  *Id.* at 701.  Thus, the Supreme Court concluded, "*Grable* emphasized that it takes more than a federal element 'to open the "arising under" door.' . . . This case cannot be squeezed into the slim category *Grable* exemplifies."  *Id.* (citation omitted).

**3.  *Adventure Outdoors***

Since the Supreme Court issued *Grable* and *Empire*, the Eleventh Circuit has had occasion to consider and apply the principles embodied in these cases.  In *Adventure Outdoors*, 552 F.3d 1290, New York City officials had conducted an investigation into sales of firearms by firearm dealers to individuals buying the items on behalf of people ineligible to purchase or possess such weapons themselves.  During the course of the investigation, investigators acting at the behest of New York City officials conducted sham so-called straw-purchaser transactions in which one investigator (supposed to be the person ineligible to possess a firearm) would interact with the

firearms dealer regarding the desired weapon, and another investigator would swoop in at the last minute to complete the paperwork and make the actual purchase from the dealer. When the officials completed the investigation, they held a press conference at which they announced the filing of a civil action against numerous gun dealers including the *Adventure Outdoors* plaintiffs. During the course of the press conference, the officials made several statements to the effect that the gun dealers had been caught violating federal gun laws and regulations. The *Adventure Outdoors* plaintiffs sued the New York City officials and others in Georgia state court for, among other causes of action, defamation, and the defendants removed the case to federal court. When the plaintiffs sought to remand the matter, the district court denied the motion. On appeal, the Eleventh Circuit reversed. *See id.* at 1292.

In reaching this determination, the Eleventh Circuit took a detailed look at *Grable* and *Empire*. First, the Eleventh Circuit recognized that the plaintiffs' defamation claims necessarily raised a federal issue that was actually disputed. In this regard, the court explained that in order for the plaintiffs to recover for defamation, the plaintiffs had to prove the falsity of the defendants' statements concerning federal law, an issue that the parties "hotly contested." *Adventure Outdoors*, 552 F.3d at 1298. Thus, the Eleventh Circuit determined that the case satisfied the first two *Grable* requirements: the case necessarily involved a federal issue, and that federal issue was actually disputed.

The *Adventure Outdoors* defendants lost traction in their bid for removal, however, when the Eleventh Circuit considered the substantiality requirement. As the Eleventh Circuit explained, "In *Grable*, the 'meaning of the federal statute [was] actually in dispute [and] appear[ed] to be the only legal or factual issued contested in the case.'" *Id.* at 1299 (quoting *Grable*, 545 U.S. at 315).

Moreover, the Eleventh Circuit noted that "a crucial factor supporting the result in *Grable* was the presence of a 'nearly pure issue of law.'" *Id.* (quoting *Empire*, 547 U.S. at 700).

In *Adventure Outdoors*, by contrast, the Eleventh Circuit rejected the defendants' characterization of the dispute as turning on such a nearly pure issue of federal law. *Id.* Instead, the court pointed out that contrary to the defendants' contention that video recordings of the undercover transactions documented all relevant conduct, the plaintiffs asserted that the defendants fraudulently induced the plaintiffs to make the sales at issue by deceiving the plaintiffs into believing that the individual purchasing the firearm was, indeed, to be the end-owner and possessor of the gun. *Id.* at 1300. Thus, the Eleventh Circuit determined, resolution of the plaintiffs' claims would ultimately require an evaluation of this fact-based argument. *Id.* As a result, the resolution of the case did not depend solely on a nearly pure issue of federal law. *See id.*

Moreover, the *Adventure Outdoors* case shows that the mere fact that the parties might "hotly contest" an issue of federal law, the court should not necessarily accept that situation as evidence that the meaning of the relevant federal law is, in fact, unclear. *Id.* Indeed, the Eleventh Circuit rejected the defendants' contention that the issue of federal law on which they relied to assert "arising under" jurisdiction was in doubt. *See id.* (citations omitted) ("The defendants are mistaken [that the state of the law is in question]; federal courts have upheld numerous convictions for dealer participation in simulated straw purchases.").

In addition, the Eleventh Circuit found "central" to the substantiality analysis in *Grable* "the importance of the government's interest in the disputed federal tax provision and the ability of a federal agency to vindicate its action in federal court." *Id.* at 1300 (citing *Grable*, 545 U.S. at 315). In other words, in *Grable*, the outcome of the private parties' civil action turned on the propriety of

a federal agency's actions and its construction of the federal tax code, which it was charged with executing. Yet in *Adventure Outdoors*, the court explained, state court application of federal criminal law in the civil context at issue in the case did not pose a "serious threat" to the federal interest in the uniformity and consistency of federal criminal law. *Id.* As the Eleventh Circuit explained,

> If the state court were to exercise jurisdiction [in the *Adventure Outdoors* case], the federal courts still "would retain full authority and responsibility for the interpretation and application of federal criminal law, for they would not be bound by [the] state court interpretation []" of the federal gun statutes. . . . In resolving the federal issue, the state court would "be guided by federal court interpretations of the relevant federal criminal statutes." . . . As previously noted, federal law provides clear guidance in this case. Additionally, the plaintiffs have not challenged the actions of the ATF, the federal agency charged with enforcing the gun laws. Thus, this case is unlikely to impact the federal government's interests or its ability to vindicate those interests through administrative action.

*Id.* at 1300-01 (citations omitted). Besides all of these factors, the Eleventh Circuit noted that the legal issue in *Grable* "'was both dispositive of the case and would be controlling in numerous other cases.'" *Id.* at 1301 (quoting *Empire*, 547 U.S. at 700). In *Adventure Outdoors*, on the other hand, resolution of the federal legal issue would not dispose of the case. *Id.*

Finally, the Eleventh Circuit found that "the 'congressionally approved balance of federal and state judicial responsibilities'" also supported remand. *Id.* at 1302 (quoting *Grable*, 545 U.S. at 314). Whereas in *Grable*, "'because it will be the rare state title case that raises a contested matter of federal law,' the exercise of federal jurisdiction [in *Grable*] . . . 'portend[ed] only a microscopic effect on the federal-state division of labor[,]'" *id.* (quoting *Grable*, 545 U.S. at 315), the Eleventh Circuit expressed concern that "by authorizing the exercise of federal jurisdiction [in *Adventure*

*Outdoors*], [the court] would open the doors of the federal courts in this circuit whenever a defamation defendant accuses a plaintiff of violating federal law." *Id.*

### B. Application of the Controlling Case Law to This Case

### 1. This Case Does Not Necessarily Involve An Issue of Federal Law, Actually Disputed

The Court finds that the Eleventh Circuit's interpretation of *Grable* and *Empire* in *Adventure Outdoors* requires remand of the instant case. Here, Kanfer proceeds under the Florida Whistle-Blower Act ("FWA"). Under that statute, Kanfer must prove each of the following: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) a causal link between the adverse employment action and the statutorily protected expression existed. *White v. Purdue Pharma, Inc.*, 369 F. Supp. 2d 1335, 1336 (M.D. Fla. 2005) (citing *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950 (11th Cir. 2000); *Rice-Lamar v. City of Fort Lauderdale*, 853 So. 2d 1125, 1132 (Fla. 4th DCA 2003); *Taylor v. Mem'l Health Systems, Inc.*, 770 So. 2d 752, 754 (Fla. 5th DCA 2000); *Golf Channel v. Jenkins*, 752 So. 2d 561, 568 (Fla. 2000)). Under the FWA, among other examples, statutorily protected expression includes "object[ing] to, or refus[ing] to participate in, any activity, policy, or practice of the employer, which is in violation of a law, rule, or regulation." *See* Fla. Stat. § 448.102(3). The FWA defines "law, rule, or regulation," in turn, as "any statute or ordinance or any rule or regulation adopted pursuant to any federal, state, or local statute or ordinance applicable to the employer and pertaining to the business." Fla. Stat. § 448.101(4).

Florida courts have not specifically addressed whether the FWA private-sector cause of action requires a plaintiff to prove that the conduct to which the employee objected actually violated the law or whether a good-faith reasonable belief that it did will suffice, and some difference of

opinion exists among federal courts to have considered the issue. *Compare Padron v. Bellsouth Telecommunications, Inc.*, 196 F. Supp. 2d 1250, 1255 (S.D. Fla. 2002) (importing analysis of retaliatory discharge from Title VII retaliation cases to FWA claims where no state case law existed on point); *cf. also Channel v. Jenkins*, 752 So. 2d 561, 566 (Fla. 2000) (the FWA is a remedial statute which should be liberally construed in favor of granting access to the remedy provided by the legislature) *and White*, 369 F. Supp. 2d at 1337 (statutory language of FWA unambiguously requires an actual violation); *see also Branche v. Airtran Airways, Inc.*, 2005 WL 1051097 (M.D. Fla. 2005); *Smith v. Psychiatric Sols., Inc.*, 2009 WL 903624, *7 (N.D. Fla. Mar. 31, 2009). Whereas the bulk of federal cases addressing the issue have concluded that the FWA calls for proof of an actual violation of law, in *Padron*, 196 F. Supp. 2d 1250, 1255, the court found that a plaintiff need only demonstrate that he, in good faith, reasonably believed that the objected to conduct violated the law.

In this case, Kanfer asserts he "opposed [his supervisors' instruction to "cold call" former customers of WellCare to entice them to return] as it violated the Code of Federal Regulations regarding solicitation, as well as the rules set forth by the Centers for Medicare & Medicaid Services (CMS), a division [of the] U.S. Department of Health & Human Services." D.E. 1 at 11. Thus, here, where no Florida case law construes the FWA's provision regarding whether a plaintiff must demonstrate an actual violation of law and federal courts are not in agreement on the issue, if Florida courts ultimately adopt the more lenient standard requiring proof only that a plaintiff held a reasonable belief that a law has been violated, resolution of Kanfer's FWA claim will not "necessarily raise" a federal issue requiring interpretation of a federal law, unlike in *Grable*, *Empire*, and *Adventure Outdoors*.

Even assuming, *arguendo*, however, that the correct construction of the FWA demands proof

of an actual violation of the law, other considerations under *Adventure Outdoors*'s analysis of *Grable* and *Empire* dictate a finding that this case should be remanded. In this regard, the Court notes that WellCare argues that even if its supervisors directed Kanfer to cold-call former plan members, such conduct was not in clear violation of the applicable federal regulations and guidance at the time because WellCare has more than one program subject to the regulations and guidance, and some of its customers are members of one plan and former members of another plan. According to WellCare, the applicable regulations and guidance could have been fairly construed to allow companies to contact their current members of one plan about re-enlisting in another WellCare plan from which such members had previously dis-enrolled. Thus, WellCare urges, a federal court should decide whether the regulations in place at the time prohibited WellCare from contacting its current customers for one of WellCare's plans about re-enrolling in another of its plans.

This argument, however, highlights a problem with WellCare's contention that this case necessarily requires the resolution of an actually disputed federal issue. The Complaint in this case alleges only that WellCare supervisors instructed him "to 'cold call' former customers of Well[C]are to entice them to return." D.E. 1 at 11. It does not elaborate on whether the former customers were former customers for all purposes or whether, instead, the former customers remained WellCare customers for at least some purposes. At the March 5, 2010, hearing, although qualifying his response by stating that the parties had not yet engaged in discovery, Plaintiff's counsel represented that he understood Kanfer to claim in his Complaint that WellCare supervisors required Kanfer to cold call former WellCare customers who were no longer customers of WellCare in any capacity and that WellCare should have been aware of this fact. If, in fact, this is what Kanfer is asserting, any issue of federal law raised is not disputed, as the parties agree that federal law at the relevant time

prohibited WellCare from knowingly cold-calling for solicitation purposes its former customers who did not remain customers of WellCare in at least some capacity.  Consequently, the case would not satisfy "arising under" jurisdiction under *Grable* and its progeny.

If, on the other hand, as WellCare alleges, WellCare directed Kanfer to contact only those former WellCare plan customers who remained clients of WellCare for some purposes, at the hearing, Kanfer did not indicate any disagreement with WellCare that the federal regulations governing such contacts were not entirely clear at the relevant time.  Thus, it appears that such a scenario likewise would fail to present a federal issue of law that was "actually disputed."

**2.  The Federal Issue Involved is Not "Substantial"**

Moreover, even if the parties actually disputed whether federal law at the time prohibited WellCare from calling former plan customers who remained clients of WellCare in some capacity, this case also suffers from substantiality and federal-state court balance problems under *Grable*, *Empire*, and *Adventure Outdoors*.  First, with regard to substantiality, this case does not turn on a "nearly pure issue of [federal] law."  Rather, as in *Adventure Outdoors*, where the parties contested whether the plaintiffs actually knowingly sold firearms to buyers they believed to be straw-purchasers, this case involves a substantial factual issue concerning exactly whom WellCare supervisors allegedly directed Kanfer to call, as well as whether WellCare should have known that anyone it instructed Kanfer to contact was a former customer of WellCare's for all purposes.  If Kanfer can prove that he resisted WellCare's knowing instructions to cold call individuals who, for all purposes, were former customers of WellCare, the parties agree that any such conduct by WellCare would have been in violation of federal law.  WellCare, however, insists that its supervisors instructed Kanfer to contact only former members who remained WellCare members of

some plan.

In addition, the FWA claim requires the presiding court to determine issues besides whether WellCare's alleged conduct violated federal law. Among other such matters, a court resolving this case may well have to consider whether the FWA requires proof of an actual violation of the law or some lesser showing. Additionally, Kanfer would have to prove that a causal link between his objecting to calling former WellCare customers and his firing existed. Where, as here, resolution of these other issues may well drive the outcome of the case, any substantiality of the federal issue wanes.

Second, the Court cannot agree with WellCare that this case involves a substantial issue of federal law simply because federal issue relates to interpretation of the Medicare regulations, an area that WellCare describes as uniquely federal. To the contrary, the Court finds that any substantiality of the federal issue is further eroded by the fact that unlike in *Grable*, where the resolution of the case depended upon an evaluation of the correctness of the IRS's actions and actual application of its construction of a statute it was charged with administering, no acts of any federal agency are in controversy here, and WellCare can point to no actual application of the relevant regulations and guidance by CMS or HHS to either party in this case in the underlying facts. As the Eleventh Circuit did in *Adventure Outdoors*, this Court views this lack of federal agency involvement as "central" to its determination that the federal issue that WellCare raises in this case lacks the requisite "substantiality." Because the federal issue that this case arguably involves is not endowed with the necessary substantiality, under *Grable* and its progeny, this Court should remand the matter to state court.

### 3. The Balance of Federal and State Judicial Responsibilities Supports Remand

Furthermore, even if the federal issue at hand did not suffer from the substantiality problem discussed above, the "congressionally approved balance of federal and state judicial responsibilities" requires remand.  *See Grable*, 545 U.S. at 314.  This matter raises similar concerns to those expressed by the Eleventh Circuit in *Adventure Outdoors* when it opined that the exercise of federal jurisdiction in that case would open the doors of the federal courts whenever a defamation defendant accused a plaintiff of violating federal law.  In this case, were the Court to find "arising under" jurisdiction, the precedent would, likewise, invite all defendants in cases where a plaintiff had deliberately decided to proceed only on a state employment law claim arguably requiring proof of a violation of federal law to litigate in federal court.  As the Sixth Circuit noted in considering the propriety of removal of a whistle-blower action under Ohio public policy,

> Employment litigation is a common occurrence in both federal and state courts.  Federal legislation has provided access to the federal courts by aggrieved employees under specifically delineated circumstances , . . . but our perception is that the bulk of the judicial business in the United States in this area is conducted by the state courts.  This balance would be upset drastically if state [employment] public policy claims could be converted into federal actions by the simple expedient of referencing federal law as the source of that public policy.  We believe such a dramatic shift would distort the division of judicial labor assumed by Congress under section 1331.

*Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 553 (6th Cir. 2006).

In this case, the reasons for this balance are apparent.  Any resolution of Kanfer's claim may well require the presiding court to determine whether the FWA requires a plaintiff to establish an actual violation of the law by the employer or whether a good-faith reasonable belief or some other formulation will suffice.  Similarly, the presiding court may have to determine whether, even if

subsequent agency guidance has demonstrated that an act violates federal law, if the illegality of the act was not clear at the time that the employer engaged in it, such conduct can satisfy the FWA's requirement that a plaintiff show that his employer took action against him in retaliation for the employee's refusing to commit an act in violation of law.  The presence of these issues in this case demonstrates that this matter primarily involves and turns upon construction of state law, not federal law.  Thus, the appropriate federal-state court balance dictates that this matter should be resolved by a state court, not a federal one.  In short, this case does not fall into the "slim category" of cases where "arising under" jurisdiction can apply, despite the fact that the cause of action pled is not a federal one.  *See Empire*, 547 U.S. at 701.

Nor, as WellCare suggests, does *Ayres v. Gen. Motors Corp.*, 234 F.3d 514 (11th Cir. 2000), require a contrary conclusion.  As the Eleventh Circuit noted in *Adventure Outdoors*, the Eleventh Circuit decided *Ayres* without the benefit of *Grable*.  *See Adventure Outdoors*, 552 F.3d at 1302 n.4.  It has since accounted for *Grable* in *Adventure Outdoors*.  For this reason alone, the Court finds *Ayres* not to be controlling on the issue presently before the Court.

Nevertheless, *Ayres* is also factually distinguishable from the case under consideration.  In *Ayres* the plaintiffs, who had purchased used automobiles manufactured by and containing components produced by the defendants, sued under Georgia's civil RICO statute, asserting violations of the federal mail and wire fraud statutes as predicate offenses.  In order to establish federal mail and wire fraud violations, the plaintiffs had to demonstrate that the defendants had violated the National Traffic and Motor Vehicle Safety Act by failing to disclose shortcomings of the automobiles they produced.  Describing why the federal issue in *Ayres* met the substantiality test, the Eleventh Circuit in *Adventure Outdoors* noted that resolution of the plaintiffs' claim in *Ayres*

required the presiding court to "construe independent bodies of federal law and to determine the legal effect of the interaction of those two bodies of law." *Adventure Outdoors*, 552 F.3d at 1302. Indeed, the Eleventh Circuit described *Ayres* as "'one of those exceptional cases' in which the exercise of federal jurisdiction over a state-law cause of action is appropriate." *Id.* at 1302 (quoting *Ayres*, 234 F.3d at 519). In contrast, the pending case, like *Adventure Outdoors*, requires, at most, the consideration of only one area of federal law. Thus, in the absence of the other substantiality factors previously discussed, it cannot qualify as the type of "exceptional case[]" that *Ayres* and *Grable* constitute.

### *Conclusion*

For the foregoing reasons, I respectfully recommend that the Court **GRANT** Plaintiff Kanfer's Motion for Remand [D.E. 5]. The parties shall have ten (10) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable William J. Zloch, United States District Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the district judge of an issue covered in the report and shall bar the parties from attacking on appeal the factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *R.T.C. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir.

1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (*en banc*);[2] 28 U.S.C. § 636(b)(1).

**FILED AND SUBMITTED** at Fort Lauderdale, Florida, this 6th day of March, 2010.

_____
ROBIN S. ROSENBAUM
UNITED STATES MAGISTRATE JUDGE

cc:   Hon. William J. Zloch
      Counsel of Record

---

[2] Decisions rendered by Unit B of the former Fifth Circuit constitute binding precedent in the Eleventh Circuit. *Stein v. Reynolds Secs., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).